Gebbn, J.
delivered the opinion of the court.
This is an action of trover for the value of several slaves named in the declaration. The cause came on before the circuit court upon an agreed case, which shows the following facts: Abner N. White, of Williamson county, made his will in 1835, in the third clause of which he makes the following devise:
“I bequeath unto my sister, Isabella, the following negroes, viz: Susan and her child Frances, Charity, Ann, Adaline and Austin.” The 7th clause of the will is as follows: “Since writing the bequest to my sister, Isabella, I have reflected that it is possible she might marry some man, who would squander her property; I now give the negroes named for her to my brothers, William and James, in trust for her and her heirs’ benefit.” •
The testator died, leaving his sister, Isabella,' unmarried. She afterwards intermarried with Dabney C. Collier, who acquired possession of the negroes; and held them until his *490 death. The plaintiff is the administrator of the estate of Collier, and brings this suit against his widow to recover the negroes devised to her in the third clause of her brother’s will; and which, with their increase, she claims, as having been her separate property, free from the control of her husband.
Two questions have been raised at the bar, upon which the result of this case depends. First, whether by the will it appears to have been the intention of the testator to create a separate estate; and, secondly, whether such a clause in a gift or devise is valid, if it take effect while the donee is discovert.
1. In the determination’ of the first 'question, we are to ascertain the intention of the testator; for, as no form of words is necessary to create an estate to the separate use, if the intention of the testator clearly appears to have been to exclude the marital right of the husband, the court will carry such intention into effect.—Clancy on Rights, 562; Hamilton vs. Bishop, 8 Yer. R.; 2 Kent Com. 5 ed. 154-5.
In this case, the negroes had been given absolutely by the third clause of the will; and by the 7th clause, the testator gives the same negroes to his brothers, William and John, in trust for his sister, Isabella, and her heirs’ benefit, because he says, “since writing the bequest to my sister, Isabella, I have reflected that it is possible she might marry some man, who would squander her property.”
The reason thus given for changing the form of the bequest, has no meaning, unless he intended the property to be held by the trustees for Isabella’s separate use. The gift contained in the third clause would not have been materially changed. But it is evident the testator intended to make a material change in the character of the bequest. He had reflected that his sister might marry some improvident man, who would squander her property, and to prevent any husband she might take from thus squandering it, he gives it to trustees, for her and her heirs’ benefit, so that such husband should be prevented from wasting it, by excluding him from all control over it.
The gift for “her and her heirs’ benefit,” or, in other words; *491 for the benefit of Isabella and her children, of itself plainly shows the intention to exclude the marital rights of any husband she might take; but when to the natural import of these words, be added the reason which is stated for this form of bequest, and the fact that trustees are interposed, no doubt is left on our minds as to the meaning of the will.
2. As to the second question, whether such gift to the separate use can take effect if made to an unmarried woman, but little need be said. For, whatever doubt may have been thrown upon the subject, by some recent decisions in England, the question is now firmly settled by several late decisions in that country, in which, the whole doctrine has been reviewed. The doubt which has been thrown upon the validity of a clause to the separate use, when property is settled upon an unmarried woman, is of comparatively recent origin. From the time of Lord Thurlow, until the case of Newton vs. Reid, 4 Simons Rep. 141, no doubt existed as to the validity of such a clause. In Pybus vs. Smith, 3 B. C. R. 347, Sockett vs. Wray, 3 B. C. R. 485: Wagstaff vs. Smith, 9 Vesy, 524; and Beadle vs. Dodd, 1 Term R. 193—the doctrine is clearly recognized. In Beadle vs. Dodd, Mr. Justice Buller said: “Whatever might be the construction upon the will alone, yet taking both the will and codicil together, it is clear that this restriction applies to any future, as well as a present husband. The names of the husbands are not mentioned. The limitation to trustees is during the life of the wife; this therefore must extend to every husband she may have.”
In the case of Anderson vs. Anderson, 2 Myl. & Keene 427, Sir John Leach sustained the validity of the gift to the separate use of an unmarried woman, and granted an injunction to restrain the husband from receiving the rents of the property given before marriage to the separate use of the wife, and from interfering with the separate estate. This order was affirmed by Lord Eldon.
The case of Newton vs. Reid, decided by the Vice Chancellor, Sir Lancelot Shadwell, brought the doctrine into question; and in the case of Massy vs. Parker, 2 Myl. & Keene 174, Sir C. C. Pepys, Master of the Rolls, (now Lord Chan- *492 eellor Cottenham,) expressly decided that “the fetters attempted to be imposed upon an unmarried female legatee, are inoperative before her marriage, because they are inconsistent with the nature of her estate. She might have given it to any one before the marriage; and why may she not, by the act of marriage, give it to her husband?” Upon principle, therefore, he said, he had no doubt of the right of the husband; but he was supported by the case of Newton vs. Reid, which had been alluded to in the case of Brown vs. Pocock, 2 Russ & Myl. 510, by the Lord Chancellor, without disapprobation.
“Thus stood the doctrine, when the case of Tullett vs. Armstrong (1 Beavan 1) came before the Master of the Rolls in 1838. In that case, Lord Langdale reviews the cases, and comes to the conclusion, that, to sanction the propositions in the cases of Newton vs. Reid and Massy vs. Parker, would defeat the object and purpose which were contemplated by this court, when it applied its principles of equity to the support of the separate estate of married women.” He therefore stated, as the result of the authorities and practice of conveyancers, “that property given to a woman for her separate use, independent of any husband, may, under the authority of this court, be enjoyed by her during her coverture as her separate estate, although the property originally, or at any subsequent period or periods of time, became vested in her when discovert.”
“Whether the gift to her separate use be made with, or without the power of alienation, the restraint is annexed to the separate estate only, and the separate estate has its existence only during the coverture; while the woman is disco-vert, the separate estate, whether modified by restraint or not, is suspended and has no operation, though it is capable of arising upon the happening of a marriage.”
This case was affirmed by Lord Cottenham in 1840, (4 Myl. & Cr. 377, 392,) and settled, as we think, the doctrine on this subject upon just reasoning and correct principles.
In the case of Scarborough vs. Borman, (1 Beavan 34,) the same Judge decided that where A bequeathed a sum in trust for his daughter, then, and at his death a widow, for her sepa *493 rate use, and after the testator’s death she married, the husband acquired no interest in the fund.”
In view of these principles thus settled, we are of opinion that Collier, the husband of the defendant, acquired no interest in the slaves in controversy, and that his administrator is not entitled to recover in the present suit.
Affirm the judgment.